1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KENNARD LEE DAVIS,

11            Plaintiff,                    No. CIV S-04-0821 LKK KJM P

12        vs.

13   M. KNOWLES, et al.,

14            Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16            Plaintiff is a California prisoner proceeding pro se with an action for violation of

17   civil rights under 42 U.S.C. § 1983.  This action is currently proceeding against defendants Cook,

18   Grannis, Hodges-Wilkins and Stocker (defendants) for their allegedly having denied plaintiff

19   surgery for a dislocated finger in violation of the Eighth Amendment.  See Docket entries 8, 57 &

20   86; Opp'n at 4:1-7.  Defendants' motion for summary judgment is before the court.  Plaintiff has

21   filed an opposition.  Defendants have not replied.[1]

22   /////

23   /////

24   _____

25        [1] Plaintiff has moved for a denial of the motion based on the lack of a reply alone.  A
     reply is optional, however, even after a request for an extension of time to reply, as was made
26   here.  The court proceeds to resolve the motion on the record before it.

                                              1

I. <u>Summary Judgment Standards</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>See id.</u> at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party

1   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

5   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

6   1436 (9th Cir. 1987).

7          In the endeavor to establish the existence of a factual dispute, the opposing party

8   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

9   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

10  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

11  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

12  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

13  committee's note on 1963 amendments).

14         In resolving the summary judgment motion, the court examines the pleadings,

15  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

17  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

18  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

19  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

20  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

21  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

22  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

24  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

26  /////

1    On May 19, 2006, the court advised plaintiff of the requirements for opposing a

2 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

4 Eikenberry, 849 F.2d 409 (9th Cir. 1988).

5 II.  Analysis

6    The Eighth Amendment's prohibition of cruel and unusual punishment extends to

7 medical care of prison inmates.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  In order to state

8 a section 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a

9 prison inmate must allege "acts or omissions sufficiently harmful to evidence deliberate

10 indifference to serious medical needs."  Id. at 106.

11    A.  Defendant Cook

12    In his complaint, signed under the penalty of perjury, plaintiff alleges that on

13 February 27, 2003, and while incarcerated at North Kern State Prison (NKSP), he reported to

14 medical officials that he had a broken or dislocated finger.  On March 5, 2003, plaintiff saw

15 defendant Cook, a doctor, about the finger.  Dr. Cook indicated that plaintiff could not have

16 surgery on his finger while housed at NKSP, and then referred plaintiff to an orthopedic

17 specialist.  Second Am. Compl. ¶¶ 1A-1C.  The briefing on summary judgment clarifies the

18 chronology of Dr. Cook's interactions with plaintiff.  It is undisputed that Cook saw plaintiff on

19 January 17, 2003, shortly after he arrived at NKSP.  At that time, Dr. Cook diagnosed chronic

20 dislocation of the left third finger since November 2002, checked plaintiff's medications and

21 requested an orthopedic consult with a specialist.  On March 11, 2003, Dr. Cook saw plaintiff for

22 the second and last time.  She confirmed the diagnosis, asked a nurse to check on the status of the

23 requested consult[2] and told plaintiff to follow up with his yard doctor if the consult had not

24 happened within a month.  Decl. of Page Cook, D.O. (Cook Decl.), ¶¶ 8-11, 13-16; Decl. of

25    _____

26    [2]  Dr. Cook says she did not know on March 11 that the Acting Chief Physician had
deferred the consult on January 28, 2003.  Cook Decl. ¶¶ 11, 14.

4

Kennard Lee Davis (Davis Decl.), ¶¶ 7-8, Ex. 2 & Ex. 3 at 8-10.  While the parties dispute whether Dr. Cook saw plaintiff a third time, on March 5, 2003, for an interview related to a grievance, and also whether Dr. Cook ever told plaintiff he could not have surgery at NKSP, these disputes do not create a general issue of material fact for the purposes of the pending motion.

Defendants argue defendant Cook is entitled to summary judgment because plaintiff fails to point to any evidence indicating Cook was ever deliberately indifferent to plaintiff by failing to obtain surgery for his dislocated finger.  On the record before it, the court agrees.  Plaintiff does not dispute that Dr. Cook saw him and took steps to respond to his complaints.  He fails to point to anything indicating it was within defendant Cook's power to order surgery for plaintiff or within Cook's power and ability to perform the surgery herself.  Second, plaintiff fails to point to anything suggesting that the appropriate course of action for Cook, who saw plaintiff early on in plaintiff's efforts to obtain treatment for his finger once he arrived at NKSP, was something other than to refer plaintiff to an orthopedic specialist.  Plaintiff thus has failed to establish there is a genuine issue of material fact as to whether defendant Cook was deliberately indifferent to plaintiff's medical condition.  Defendant Cook is entitled to summary judgment.

B. Defendants Grannis and Hodges-Wilkins

Plaintiff also alleges defendants Grannis and Hodges-Wilkins denied plaintiff surgery in violation of the Eighth Amendment on October 1, 2003, when they denied a prisoner grievance authored by plaintiff, and thereby "confirmed, agreed, and supported the policy, practice, and procedure" of NKSP.  Second Am. Compl. ¶¶ 1E, 2E & Ex. 1.

In the consolidated grievance at issue, submitted and processed at NKSP and California State Prison - Los Angeles (LAC) to which plaintiff was transferred, plaintiff complained that he was being denied "medical treatment and/or surgery" for his left middle

finger.  Second Am. Compl., Ex. 4.[3]  The grievance originally was dated February 20, 2003.  The

informal level response, dated March 7, 2003, noted plaintiff had been seen by Dr. Cook on

January 17, 2003, and referred to an orthopedic doctor.  Id.  Plaintiff appealed to the formal level

on March 15, 2003.  In response, on May 23, 2003, officials at LAC issued a partial grant, noting

that a doctor at LAC referred plaintiff to a hand surgeon on April 16, 2003, and the referral was

awaiting approval.  They also noted that plaintiff had an appointment to see an orthopedic doctor

on April 4, 2003, but he was transferred to LAC from NKSP on March 24, 2003 resulting in loss

of the first appointment date.  Id., Ex. 5.  On June 2, 2003, plaintiff appealed to the Second

Level, saying he still had not received any kind of treatment "for the diagnosis confirmed here at

C.S.P.-L.A.C."  Id.  In response, he again received a partial grant, and as of July 3, 2003, medical

staff represented his "outside orthopedic consultation will be expedited."  Id., Ex. 3.

On July 22, 2003, plaintiff appealed to the Director's Level saying he had not

received the benefit of the prior partial grants, that his corrective treatment was being "delayed

and denied," and that he was in "extreme pain."  Id., Ex. 5.  The Director's Level response was

signed by P. Enriquez "for" defendant Grannis and, based on a review conducted by Hodges-

Wilkins, the appeal was denied.  Grannis says she did not "review it, nor did I have any role in

issuing the final decision."  Grannis Decl. ¶ 7.  The response noted that plaintiff had been

scheduled for his orthopedic consultation on August 1, 2003, but that appointment was canceled

for security reasons, because plaintiff had learned of the exact date of the consult.  As of the time

the response was prepared, plaintiff reportedly was scheduled to be seen the first week of

September 2003.  Second Am. Compl., Ex. 1.  The decision itself is dated, by date stamp,

October 1, 2003.  Id.

Plaintiff avers he "was never contacted" by the doctor's office about the August 1,

2003 appointment, and challenges the lack of evidentiary support for Hodges-Wilkins'

---

[3]  Plaintiff has identified each page of the attachments to the complaint as a separate
exhibit.

1   representation to the contrary.  Davis Decl. ¶ 19.  It appears undisputed that plaintiff did not

2   receive an orthopedic consultation until January 9, 2004; the orthopedic specialist then

3   recommended surgery.  Id. ¶ 19, Ex. 3 at 12, Ex. 4 at 1.  Although surgery at one point appears to

4   have been scheduled for April 2004, plaintiff avers he was not seen by a hand surgeon until July

5   2, 2004, at which point, he says "the broken, fractured and dislocated left hand third finger had

6   suffered irreparable damage and had healed incorrectly.  Id., ¶ 25, Ex. 4 at 1; cf. Second Am.

7   Compl. ¶ 3D (alleging delay has led to finger being "now permanently unuseable and lacking

8   mobility, even if given an orthopedic surgery right now").

9          In his declaration with respect to the time period following the issuance of the

10  Director's Level decision at issue here, plaintiff says the delay following October 1, 2003 led to

11  his experiencing "extreme pain."  Davis Decl. ¶ 20.  He opines that Grannis should not have

12  delegated review of his appeal to Enriquez and says she should have consulted an "independent

13  doctor" to assess the adequacy (or not) of his medical care.  Id. ¶ 21.

14         Despite his displeasure with Grannis's delegation of his appeal to Enriquez,

15  plaintiff has not and cannot cite any authority for the proposition that Grannis should be held

16  responsible for any outcome resulting from denial of the appeal given her lack of personal

17  involvement in rendering the decision to deny.

18         Hodges-Wilkins, for her part, avers she reviewed plaintiff's grievance and

19  attachments, as well as plaintiff's file in the process of working on the Director's Level response.

20  Based on her review, Hodges-Wilkins noted that plaintiff "had been examined by medical

21  doctors," and even though the August 1, 2003 appointment was cancelled plaintiff "had been

22  rescheduled for an orthopedic consultation."  Decl. of M. Hodges-Wilkins ¶ 4.

23         With respect to Hodges-Wilkins, given that her role was related to processing

24  plaintiff's grievance, plaintiff's claim against her cannot survive summary judgment.  This is

25  because plaintiff has no right to a prisoner grievance process.  Ramirez v. Galazza, 334 F.3d 850,

26  860 (9th Cir. 2003).  Even though the subject matter of the grievance implicates potentially the

1  Eighth Amendment, Hodges-Wilkins' actions could not reasonably be found to be deliberately

2  indifferent given that she confirmed the rescheduling of plaintiff's appointment.

3         Grannis and Hodges-Wilkins also are entitled to summary judgment with respect

4  to this claim against them.

5         C.  Defendants Grannis and Stocker

6         Finally, plaintiff claims defendants Grannis and Stocker further "confirmed,

7  agreed and supported the policy, practice and procedure of [CSP-LAC]" with respect to the

8  delays in his actually obtaining surgery, in a Director's Level response dated April 9, 2004.

9  Second Am. Compl. ¶ 3E.  The Director's Level Appeal by plaintiff was dated January 19, 2004.

10  Davis Decl., Ex. 4 at 4.  The response states surgery was scheduled to occur in April 2004.  Id.,

11  Ex. 16.  As noted above, plaintiff did not see a surgeon until July 2004.  Id. ¶ 25.

12         In the grievance underlying this Director's Level response, plaintiff alleges that on

13  September 3, 2003, he was transferred to the California Mens Colony (CMC) and that on

14  September 9 he was examined by a physician there who ordered that plaintiff see an orthopedic

15  specialist.  Second Am. Compl. ¶ 3A.  On November 1, 2003, having not yet been seen by an

16  orthopedic specialist, plaintiff submitted his grievance, which reads as follows:

17
             I am being denied medical treatment and / or surgery for my
18           broken, dislocated and fractured left hand middle finger.  I have
             been requesting that this medical problem be treated at each
19           institution I have been inn . . . Here at C.M.C., on 9-9-03, I was
             scene by the Doctor . . . however, I have still not had the medical
20           surgery.

21  Davis Decl., Ex. 4 at 3 (verbatim transcript).  On November 20, 2003, plaintiff was transferred to

22  LAC.  He alleges the transfer was part of an effort to deny him care for his finger.  Second Am.

23  Compl. ¶¶ 3C, 4A.

24  /////

25  /////

26  /////

8

1    The initial response to plaintiff's November 1, 2003 grievance was authored by R.

2    Meyers, M.D. and reads, in relevant part, as follows:

3    You transferred from CMC to LAC on 11/20/03.  On 1/5/04, MTA
     Turner (LAC) interviewed you regarding this appeal issue.
4
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
5
     Your current institution, LAC, was contacted regarding this appeal
6    issued.  MTA Turner interviewed you on 1/5/04, and advised you
     that you have been referred for an orthopedic consultation.
7    However, the exact date of this appointment is not known at this
     time.  You may follow up with the medical staff at LAC for further
8    information.

9    Davis Decl., Ex. 4 at 2.  Dr. Meyers' response is dated January 6, 2004.  Id.

10    Not satisfied with this response, petitioner appealed to the Director's Level, as

11    noted on January 19, 2004.  He said:

12    The facts are undisputed.  I need a medical operation and / or
      surgery to fix the finger.  I have been delayed treatment for over
13    one (1) year on this issue.  I am always being transferred to a new
      prison, to deny me treatment and / or surgery. . .
14

15    Id., Ex. 4 at 4.

16    At the Director's Level, defendant Grannis responded by signing off personally on

17    April 9, 2004.  She said, in relevant part:

18    This matter was reviewed on behalf of the Director of the
      California Department of Corrections (CDC) by Appeals Examiner
19    J. Stocker, Facility Captain. . .

20    The institution [California State Prison, Los Angeles County] was
      contacted at the Director's Level Review (DLR) to obtain
21    additional information.  The orthopedic surgeon consult was
      completed on January 9, 2004; surgery was recommended and
22    approved.  Surgery is scheduled for April 2004.  The exact date of
      the appointment cannot be disclosed to preserve safety and security
23    during transportation of the appellant to the outside appointment.
      It is apparent that the appellant has been examined by licensed
24    physicians for the complaints that he describes.  He has been
      treated in accordance with the professional judgments of the
25    physicians.

26    Id., Ex. 4 at 1.

9

1         Defendant Stocker confirms he reviewed plaintiff's appeal at the Director's Level,

2  and confirmed with a Medical Appeals Analyst on February 11, 2004, that "surgery was

3  recommended, approved and scheduled for April 2004." Decl. of Jerry Stocker ¶ 4.  There is

4  nothing before the court suggesting Stocker violated plaintiff's Eighth Amendment rights.

5  Stocker simply investigated the status of the medical care plaintiff was receiving as directed by

6  Grannis; nothing suggests he conducted his investigation in a manner amounting to deliberate

7  indifference to plaintiff's serious medical needs.  See Estelle, 429 U.S. at 106.

8         Defendant Grannis indicates her signature on the response indicates her "review

9  and concurrence with the findings of the IAB Appeals Examiner Stocker," and that her

10  concurrence was reached "[a]fter making an honest effort to ascertain whether plaintiff was

11  receiving proper medical care and treatment."  Grannis Decl. ¶¶ 8, 9.

12         With respect to Grannis's decision, plaintiff avers he was transported to a new

13  institution on February 23, 2004 and never received the approved surgery. Davis Decl. ¶ 26.  He

14  points out the apparent disconnect between what actually happened with him and the conclusion

15  announced by Grannis in her decision dated in April, nearly six weeks after his transfer, that

16  surgery would occur in April.  Id. ¶¶ 25-26; cf., e.g., Second Am. Compl. ¶¶ 2C-2D, 3D, 4C-4D.

17  Defendants do not respond to this aspect of plaintiff's claim.

18         Nevertheless, there is no evidence Grannis agreed with or confirmed any

19  substantive decision made by any medical official or correctional officer.  More importantly,

20  nothing in the record indicates she participated in transfer decisions or had the power to stop

21  further transfers or to order surgery immediately; rather her role is limited to addressing prisoner

22  /////

23  /////

24  /////

25  /////

26

1  grievances, regardless of their nature.[4]  For these reasons, defendant Grannis should be granted

2  summary judgment.

3       D.  Qualified Immunity

4       The court notes defendants have argued they are immune from suit under the

5  doctrine of qualified immunity.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Defendants are

6  immune from suit as there is no evidence indicating any of them violated plaintiff's

7  Constitutional rights.  See Saucier v. Katz, 533 U.S. 194, 201 (2001) (officers entitled to

8  qualified immunity are immune from suit if there are no facts indicating the officers violated a

9  plaintiff's Constitutional rights); Pearson v. Callahan, 555 U.S. ___, 129 S. Ct. 808 (2009).

10       Accordingly, IT IS HEREBY RECOMMENDED that:

11       1.  Defendants' motion for summary judgment (#109) be granted; and

12       2.  This case be closed.

13       These findings and recommendations are submitted to the United States District

14  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

15  days after being served with these findings and recommendations, any party may file written

16  objections with the court and serve a copy on all parties.  Such a document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18  /////

19  /////

20

21     [4]  While Grannis's signing the Director's Level response two months after Stocker's investigation, and apparently after the April surgery date had effectively been cancelled, gives the

22  court pause, these facts are not sufficient to overcome summary judgment in Grannis's favor, given the lack of any fundamental right to a grievance process in the first place, Ramirez, 334

23  F.3d at 860, and the absence of any indication here that Grannis recklessly ignored information on plaintiff's condition.  Cf. Greeno v. Daley, 414 F.3d 645, 655-56 (7th Cir. 2005).  At the same

24  time, the court  notes that, in his second amended complaint, plaintiff asserted several defendants violated his Eighth Amendment right to medical care by repeatedly transferring him each time he

25  had treatment scheduled for his finger at a given prison.  These defendants were dismissed earlier in this action because plaintiff failed to exhaust administrative remedies with respect to his

26  claims against them.  See Docket Entry #38 at 2-6; Docket Entry #57; Docket Entry #75 at 1:18-4:2; Docket Entry #86.

shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  May 29, 2009.

_____
U.S. MAGISTRATE JUDGE

1/davi0821.57(a)